IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT AT NEW HAVEN

JENNIFER NEILANDER
DARRELL R. NEILANDER,
Plaintiffs

v.

SPECIALIZED LOAN SERVICING LLC.
RMS RESIDENTIAL PROPERTIES LLC
BENDETT AND MCHUGH P C
Defendants

Case No. 3:11 CV 1551 (JCH)
Judge
Magistrate Judge

## FIRST AMENDED COMPLAINT WITH JURY DEMAND ENDORSED HEREON

Now come Plaintiffs, Jennifer and Darrell R. Neilander, and hereby state the following as their Amended Complaint:

Jurisdiction and Venue:

1. Plaintiffs Jennifer and Darrell R. Neilander are husband and wife, and are both residents of New Haven County, Connecticut.

2. Defendant Specialized Loan Servicing LLC ("SLS") is a third-party debt collector and was acting individually and as an agent with the full knowledge and approval of its principal, R M S Residential Properties LLC. Defendant SLS maintains its principal place of business in Highland Ranch, Colorado. SLS regularly conducts business in the state of Connecticut, but is not licensed by the Connecticut Dept. of Banking as a debt collector, as required by state statue.

3. Co-Defendant R M S Residential Properties LLC ("RMS") claims to be the actual creditor for the mortgage loans of the Plaintiff and maintains its principal place of business in Santa Monica California. RMS regularly conducts business in the State of Connecticut, but is not registered or licensed with the Connecticut Dept. of Banking to conduct business in the State of Connecticut.

4. Defendant Bendett and McHugh ("B & H") is, upon information and belief, a Connecticut general partnership engaged in the practice of law. For purposes of this Complaint, Defendant B & H is a third-party debt collector, as such term is defined in the FDCPA.

5. This is an action arising under Sections 5(a), 5(m)(1)(A), 13(b), and 16(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), and 56(a); the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x; and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, to obtain monetary civil penalties for Defendants' violations of the FCRA, the FDCPA, and Section 5 of the FTC Act.

6. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and under 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), 57b, 1681s, and 1692l.

Facts Pertinent to All Counts:

7. On or about December 20, 2010 Defendant SLS contacted the Plaintiff via US Mail with a notice of an alleged debt that was owed. A true and correct copy of said letter is attached hereto as Exhibit A, and made a part hereof.

8. On or about January 4, 2011, the Plaintiff sent a letter of requesting validation of the debt pursuant to the provisions of the FDCPA to the Defendant via certified US Mail that Defendant SLS received on January 10, 2011. A true and correct copy of said letter is attached hereto as Exhibit B, and made a part hereof.

9. To date, Defendant SLS has failed to provide the requested validation, but has continued its collection activity through today's date by sending demand notices

for alleged money due and intent to foreclose notices, and has not provided proper validation or an accounting of the alleged debt, as required by the FDCPA.

10. On or about February 11,2011 Plaintiff requested copies of his credit report from the three national credit reporting agencies, Trans Union, Experian and Equifax. Upon review, the Plaintiff found that Defendant SLS was reporting erroneous, inaccurate and derogatory information in the plaintiff's credit reports.

11. Upon inspection of the said credit reports, the Plaintiff observed that Defendant SLS listed derogatory information on the Plaintiffs' Experian, Equifax and Trans Union credit reports indicating the existence of an account with Defendant SLS.

12. In response, on or about January 27, 2011, the Plaintiffs contacted Defendant SLS to dispute the information reported on the Plaintiff's credit report. A true and correct copy of said letter is attached hereto as Exhibit C, and made a part hereof.

13. Defendant SLS has never responded to the Plaintiff's request for validation of the debt.

14. As a consequence, on February 4, 2011, the Plaintiff then contacted the credit reporting agencies, Trans Union, Experian and Equifax (the "CRA's") and disputed the erroneous and inaccurate credit reporting information. A true and correct copy of said letter is attached hereto as Exhibit D, and made a part hereof.

15. As a consequence of the lack of response by Defendant SLS, on March 4, 2011, the Plaintiff then sent a cease and desist letter to Defendant SLS, demanding that Defendant SLS take no further collection action because it had failed to provide

validation of this debt pursuant to the provisions of the FDCPA. A true and correct copy of this letter is attached hereto as Exhibit E, and made a part hereof.

16. Despite the efforts of the Plaintiff to obtain validation of the alleged debt and the ongoing failure of Defendant SLS to provide it, all three CRA's have indicated they are reporting the information correctly as reported by Defendant SLS. Defendant SLS has been reporting erroneous and inaccurate information in the Plaintiff's credit reports since January 2011.

17. Despite its failure to provide the Plaintiff with the requested validation required by the FDCPA, Defendant SLS has continued to engage in collection activity and in negative credit reporting, including, but not limited to, assigning this matter to counsel.

18. On or about October 14, 2011, Plaintiffs received a letter from Defendant B & H, a true and correct copy of which is attached hereto as Exhibit F, and made a part hereof. Said letter demanded payment in full of the Plaintiffs' mortgage balance.

19. On November 7, 2011, Plaintiffs sent to Defendant B & H a letter demanding validation of the alleged debt. A true and correct copy of this letter is attached hereto as Exhibit G, and made a part hereof.

20. On or about December 6, 2011, Defendant B & H forwarded two letters to the Plaintiff that purportedly responded to the Plaintiff's repeated requests to be provided with validation of the alleged debt. Said correspondence did not provide validation of the debt. See Exhibits H and I attached hereto and made a part hereof.

21. On or about December 7, 2011, Plaintiff responded by again requesting validation of the debt from B & H. See Exhibit J, attached hereto and made a part

hereof. To date, no response has been had to Exhibit J, although all of the Defendants continue to violate the provisions of the FDCPA.

## THE FAIR CREDIT REPORTING ACT

22. The FCRA was enacted in 1970 and became effective on April 25, 1971, and has been in force since that date. In 1996, Congress extensively amended FCRA. Among other things, Congress added Section 623 of the Act, which became effective on October 1, 1997.

23. Section 621 of the FCRA, 15 U.S.C. § 1681s, authorizes the Commission to use all of its functions and powers under the FTC Act to enforce compliance with the FCRA by all persons subject thereto except to the extent that enforcement specifically is committed to some other governmental agency, irrespective of whether the person is engaged in commerce or meets any other jurisdictional tests set forth by the FTC Act.

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

**COUNT I:**

24. Plaintiffs reallege the allegations set forth in paragraphs 1 through 23 as if fully rewritten herein.

25. Section 623(a) of the FCRA describes the duties of furnishers to provide accurate information to CRA's. Section 623(a)(1)(B) prohibits furnishers from providing information relating to a consumer to any CRA if (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and (ii) the information is, in fact, inaccurate.

26. Plaintiffs contacted Defendant SLS at the address specified by SLS to

dispute information about them furnished by SLS to a CRA and to notify CRA's that the information is inaccurate.

27. Here, the Plaintiffs have also provided information to demonstrate the reasons why they dispute the alleged debut, but neither SLS nor B & H will provide them with the appropriate validation of the alleged debt.

28. Despite having received a demand for validation of the alleged debt from the Plaintiffs, Defendant SLS has continued to furnish information to a CRA relating to a consumer when the information, was in fact, inaccurate.

29. The acts and practices alleged in Paragraphs 25-28 constitute violations of Section 623(a)(1)(B) of the FCRA, 15 U.S.C. § 1681s-2(a)(1)(B). Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraphs 24-27 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT II:**

30. Plaintiffs reallege the allegations set forth in paragraphs 1 through 29 as if fully rewritten herein.

31. Section 623(a)(3) of the FCRA provides that if the completeness or accuracy of any information furnished by any person to any CRA is disputed to such person by any consumer, the information must be noted as disputed in the information reported by such person to any CRA. This provision does not require consumer disputes to be in writing.

32. Here, the Plaintiffs have advised Defendant SLS, in writing, that they dispute the completeness or accuracy of information furnished by Defendant SLS to

a CRA, Defendant SLS continues to furnish the information to CRA's without providing notice that such information is disputed by the consumer.

33. The acts and practices alleged in Paragraph 31 constitute violations of Section 623(a)(3) of the FCRA, 15 U.S.C. § 1681s-2(a)(3). Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the acts and practices alleged in Paragraph 32 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## FAIR DEBT COLLECTION PRACTICES ACT

34. In 1977, Congress passed the FDCPA, 15 U.S.C. §§ 1692-1692p, which became effective on March 20, 1978, and has been in force since that date. Section 814 of the FDCPA, 15 U.S.C. § 1692l, authorizes the Commission to use all of its functions and powers under the FTC Act to enforce compliance with the FDCPA by any debt collector, irrespective of whether that debt collector is engaged in commerce or meets any other jurisdictional tests set by the FTC Act. The authority of the Commission in this regard includes the power to enforce the provisions of the FDCPA in the same manner as if the violations of the FDCPA were violations of a Federal Trade Commission trade regulation rule. Finally, a violation of the FDCPA shall be deemed an unfair or deceptive act or practice in violation of the FTC Act.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

**COUNT III:**

35. Plaintiffs reallege the allegations set forth in paragraphs 1through 34 above as if fully rewritten herein.

36. In connection with the collection of a debt, Defendants, directly or

indirectly, have used false, deceptive, or misleading representations or means, in violation of Section 807 of the FDCPA, 15 U.S.C. § 1692e, including, but not limited to, a failure by Defendant SLS directly or indirectly, has failed to communicate to the CRA to which it reported a debt that the debt is disputed, in violation of Section 807(8) of the FDCPA, 15 U.S.C. § 1692e(8).

37. The acts and practices alleged in Paragraph 36 constitute violations of Section 807 of the FDCPA, 15 U.S.C. § 1692e. Pursuant to Section 814(a) of the FDCPA, 15 U.S.C. § 1692l(a), the acts and practices alleged in Paragraph 36 also constitute unfair or deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT IV:**

38. Plaintiffs reallege the allegations set forth in paragraphs 1 through 37 as if fully rewritten herein.

39. Despite having received numerous demands for validation without providing the requested validation, the Defendants sent to the Plaintiffs Intent to Foreclose Notices Jan 2011, February 2011, March 2011, Apri12011, May 2011, June 2011, all in violation of the FDCPA.

**VIOLATIONS OF SECTION 5 OF THE FTC ACT**

40. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce." Representations of material fact that are false or misleading constitute deceptive acts or practices prohibited by the FTC Act.

**COUNT IV:**

41. Plaintiffs reallege the allegations set forth in paragraphs 1 through 40 as if fully rewritten herein.

42. Despite repeated demands for validation of the alleged debt by the Plaintiffs, the Defendants, directly represented to the Plaintiffs that the debts were valid and that consumers had an obligation to pay the debts.

43. In truth and in fact, the material representations set forth in Paragraph 42 were false or Defendants did not have a reasonable basis for the representations at the time the representations were made.

44. Therefore, the representations set forth in Paragraph 42 were false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CLAIMS ARISING UNDER CONNECTICUT STATE LAW

**COUNT V:**

45. Plaintiffs reallege the allegations set forth in paragraphs 1 through 44 as if fully rewritten herein.

46. The actions of the Defendants violate the provisions of the Connecticut Uniform Trade Practices Act, CGS § 42-110b, as their actions constitute unfair and deceptive trade practices.

47. Because the Defendants have committed numerous violations of the CUTPA, Plaintiffs have suffered, and continue to suffer, damages.

**COUNT VI:**

48. Plaintiffs reallege the allegations set forth in paragraphs 1 through 47 as if fully rewritten herein.

49. By committing numerous violations of the FCRA, Defendant SLS has slandered the credit of the Plaintiffs, thereby causing them to suffer damages.

50. The actions were taken intentionally and with the harm to damage the Plaintiff, and with full knowledge that doing so would cause actual harm to the Plaintiffs.

WHEREFORE, Plaintiffs demand that judgment be entered in their favor, jointly and severally, against both Defendants in an amount to be determined at trial, along with an appropriate award of punitive damages, along with pre-judgment and post-judgment interest, plus their costs and expenses incurred herein, including their reasonable attorney's fees incurred, along with such other relief as the Court deems just and appropriate.

Respectfully submitted,

Jennifer Neilander, Plaintiff pro se

Darrell R. Neilander, Plaintiff pro se

## JURY DEMAND

Plaintiffs hereby demand that this matter be heard by a jury of eight (8).

Jennifer Neilander, Plaintiff pro se

Darrell R. Neilander, Plaintiff pro se

## CERTIFICATE OF SERVICE

I hereby certify that I served, via ordinary U.S. mail, postage prepaid, a copy of the foregoing Amended Complaint upon both Defendants via their counsel of record this 29th day of February, 2012.

Jennifer Neilander

John S. Mirtle, ESQ
Martha Croog, LLC
The Brownstone
190 Trumbull St, Second Flr
Hartford, CT 06103


Bendett + McHugh
160 Farmington Ave
Farmington, CT 06032

SLS
Specialized Loan Servicing, LLC
Highlands Ranch, CO 80129
1-800-315-4SLS (4757)

**MONTHLY MORTGAGE STATEMENT**

| | |
|---|---|
| Statement Date: | 12/20/10 |
| Account Number: | 1002769641 |

### Payment Summary

| | |
|---|---|
| **Payment Due Date:** | **01/01/11** |
| Current Payment: | $1,309.14 |
| Past Due Payments: | $7,239.84 |
| Escrow Payment: | $500.82 |
| Amort Fee Payment: | $0.00 |
| Optional Ins. Payment: | $0.00 |
| Outstanding Late Charges/Fees | $1,197.83 |
| Suspense Balance: | $0.00 |
| | |
| **Total Amount Due:** | **$10,247.63** |

### Account Summary

| | |
|---|---|
| Principal Balance*: | $180,134.62 |
| Escrow Balance: | -$1,691.67 |
| Interest Rate: | 7.950% |
| Interest Paid to Date: | $11,975.00 |
| Taxes Paid to Date: | $5,687.05 |

*This principal balance does not reflect the total amount required to pay your loan in full.

+ 0313407 000026585 09SL02 0936845

JENNIFER NEILANDER
30 KING ST
WALLINGFORD CT 06492-2940

Property Address:
30 KING ST
WALLINGFORD CT  06492

## IMPORTANT NOTES

- Specialized Loan Servicing is committed to courteous and responsive service, accurate and timely handling of your payments and simple, direct answers to your questions.

- Specialized Loan Servicing is pleased to offer a quick and easy way to make your mortgage payment. You may now sign up for our Automatic Payment Drafting by calling our Customer Care Center. Simply contact a customer care associate by calling 1-800-315-4SLS (4757) during our regular business hours, Monday through Friday, 6:00 am to 6:00 pm MST.

- We are pleased to announce that you may now access your account information on line at www.sls.net 24 hours a day regardless of account status! You may also use our 24-hour automated information system for up to the minute information about your account. For questions regarding this statement, to make a payment or general account information please call our Customer Care Center at 1-800-315-4SLS (4757) associates are available to assist you Monday through Friday, 6:00 am to 6:00 pm MST. TDD 1-800-268-9419, Monday through Friday, 8:00 am to 5:00 pm MST.

### Thank you for your business!

## TRANSACTION SUMMARY

| Date | Description | Total | Interest | Principal | Escrow/ Impound | Late Charge | Fees/ Advances |
|---|---|---|---|---|---|---|---|
| 11/30/10 | Mortgage Payment | 1,790.58 | 1,194.15 | 114.99 | 481.44 | 0.00 | 0.00 |
| 12/13/10 | Escrow Disbursement - Taxes | -1,919.06 | 0.00 | 0.00 | -1,919.06 | 0.00 | 0.00 |

*O00582*

X SC0192-000

## MONTHLY PAYMENT NOTICE

Make Checks payable to: Specialized Loan Servicing, LLC

☐ Check if your address has changed and fill out form on reverse side, signature required.

LOAN NUMBER: 1002769641
DATE: 12/20/10

Jennifer Neilander

SPECIALIZED LOAN SERVICING LLC
P O BOX 636005

LOAN # 4002403351 / 1002769641
Jennifer Lynn Neilander
30 King Street
Wallingford, CT 06492
TEL: (203) 949-1628

## AFFIDAVIT

30 KING STREET
WALLINGFORD, CONNECTICUT

STATE OF CONNECTICUT
COUNTY OF NEW HAVEN} ss.

I, Jennifer Lynn Neilander, hereafter Affiant, being of sound mind, competent and able to testify to the accuracy of this Affidavit, hereby confirm that all the facts stated and affirmed herein are true, correct, complete, and not misleading, admissible as evidence, and if testifying shall so state under the penalty of perjury:

1. That, Affiant makes this Affidavit based on first hand knowledge of all the facts stated herein, including the research of federal and state laws and public policy documents that govern monetary instruments related to banking and financial institutions.

2. That, Affiant and her spouse, Darrell Robert Neilander did sign alleged loan documents with AEGIS LENDING CORPORATION at SUPERIOR CLOSING SERVICES, LLC office in MILFORD, CT on May 24, 2006 concerning property located at 30 KING STREET, WALLINGFORD, CONNECTICUT.

3. That, Affiant and Affiant's spouse, Darrell Robert Neilander, did sign a promissory note and issued to AEGIS LENDING CORPORATION for processing on May 24, 2006; the promissory note was for the sum of $172,000.00.

4. That, Affiant was rushed by AEGIS LENDING CORPORATION representatives to sign other alleged closing documents and was not provided time to review or provided a clear understanding of the terms and conditions of these documents that they were requested to sign.

5. That, since the above events and the exposure of this nation's mortgage default crisis, Affiant has recently learned that there has been possible fraud committed against them by AEGIS LENDING CORPORATION representatives in withholding FULL DISCLOSURE at the signing of closing documents and that it appears fraud in the factum has been committed against them regarding their signing the mortgage note and Deed of Trust.

6. That, Affiant confirms and re-affirms their lawful and timely dispute and demands full compliance in providing FULL DISCLOSURE to all requested questions and provide all request for documentation per the LAWFUL DEBT VALIDATION DEMAND annexed hereto and made a part hereof.

7. That, AEGIS LENDING CORPORATION registered agent and SPECIALIZED LOAN SERVICING, LLC acting as servicer are being served this Affidavit and LAWFUL DEBT VALIDATION DEMAND.

I hereby state that the above is true to the best of my knowledge and understanding. The following Demand outlines my complaint based upon RESPA, TILA and the FDCPA violations and fraud perpetrated upon me by the above named financial institutions.

_Jennifer Lynn Neilander_

STATE OF CONNECTICUT
COUNTY OF NEW HAVEN } ss.

On the 4th day of JANUARY, 2011 before me, DOTHY COUSTANANC personally appeared Jennifer Lynn Neilander who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to this instrument and acknowledge to me that he is the person that executed this instrument. I certify under PENALTY OF PERJURY under the laws of the STATE OF CONNECTICUT that the foregoing paragraph is true and correct.

WITNESS by my hand and official seal.

_Signature of Notary Public_                                                        SEAL

Dorothy Ellen Constantino
NOTARY PUBLIC
My Commission Expires June 30, 2012

# QUALIFIED WRITTEN REQUEST
## &
## *LAWFUL DEBT VALIDATION DEMAND*
### Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. § 2605(e);
### Regulation X at 24 C.F.R. § 3500 et seq.
### Truth-In-Lending-Act (TILA) § 1604(e), 15 U.S.C. §§ 1601 et seq. (1968) and 1692 et seq.
### Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692c

TO:    **AEGIS LENDING CORPORATION**          **"MERS"**
        PO BOX 84308                           PO BOX 2026
        BATON ROGUE, LA 70884                  FLINT, MI 48501-2026
        USPS Certified Mail # ⁚ 7010 1870 0000 8381 8480   USPS Certified Mail#
                                               7008 3230 0002 3265 7424

        **SPECIALIZED LOAN SERVICING, LLC / Servicer**
        8742 LUCENT BLVD SUITE 300
        HIGHLANDS RANCH, CO 80129
        USPS Certified Mail # 7009 3410 0001 0332 1730

You are now in receipt of this NOTICE under the authority of the Truth-In-Lending-Act (TILA) § 1604(e), 15 U.S.C. §§ 1601 et seq. (1968) and 1692 et seq., and the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692c, and the Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. § 2605(e) and Regulation X at 24 C.F.R. § 3500 regarding loan number 4002403351 / 1002769641. I dispute the alleged mortgage debt in it's entirely for being inaccurate and firmly believe that I have had fraud in the factum committed against me for lack of full disclosure by the alleged Lender.

### NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT,
### NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL.

**THIS IS MY "QUALIFIED WRITTEN REQUEST": TILA REQUEST, RESPA REQUEST, COMPLAINT OF PROBABLE FRAUD IN THE FACTUM, DISPUTE OF DEBT & VALIDATION OF DEBT**

Reference:    Alleged Mortgage Default Loan # 4002403351 / 1002769641
              Private Land & Chattel Property located at
              30 KING STREET
              WALLINGFORD, CONNECTICUT

Attention Authorized Representative for the Above Referenced Companies / Corporations:

After several consultation meetings with Legal Counsel and knowledgeable accountants regarding this matter, I am writing to formally complain about intentional accounting omissions and probable fraud in the factum that took place at the closing in the purchase of my home. I need a clear understanding and clarification (**FULL DISCLOSURE**) of the transactions that occurred at my signing of the initial documents, the funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

With our nation's mortgage default crisis and the mortgage scams that have occurred against millions of American families, I am most concerned that potential fraudulent and deceptive practices have been committed against me in the intentional omission of due consideration in the exchange of my promissory note, my signing of the mortgage note and security agreement; including deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks.

I hereby **DEMAND** absolute first-hand evidence from you and/or your legal department with regard to the original signed promissory note and an uncertificated or certificated security concerning account numbers 4002403351 / 1002769641. In the event you refuse or fail to supply me with these documents it will be positive

Page 2 of 13

confirmation on your part that AEGIS LENDING CORPORATION never really created and owned a security. I also hereby **DEMAND** that a chain of transfer from you to wherever the security is now be promptly sent to me as well. Absent the actual evidence of the security, I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you allege I owe. By debt, I am referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or subservice for.

**To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. Upon receipt of this**

**CEASE AND DESIST FORECLOSURE NOTICE, please refrain from reporting any negative credit information [if any] to any credit reporting agency until you respond to each of the requests.**

I also request that you conduct your own investigation and audit of this account since its inception to validate the debt you currently claim I owe. Upon receipt of your answers and production of documents, I will contract with my CPA to do another audit for a secondary validation. I **DEMAND** that you validate this debt so that it is accurate to the penny!

I firmly request that you do not rely on previous servicers or originators records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account. I understand that potential abuses by you or previous servicers could have deceptively, wrongfully, unlawfully, and/or illegally:

Increased the amounts of monthly payments.
- ◊ Increased the principal balance I owe;
- ◊ Increased escrow payments;
- ◊ Increased the amounts applied and attributed toward interest on this account;
- ◊ Decreased the proper amounts applied and attributed toward principal on this account;
- ◊ Assessed, charged and/or collected fees, expenses and misc. charges I am not legally obligated to pay under this mortgage, note and/or deed of trust.

I **DEMAND** that you demonstrate that I have not been the victim of such predatory, fraudulent servicing or lending practices that have occurred throughout the nation.

To ensure this, I have authorized a thorough review, examination, accounting and audit of mortgage account

# 4002403351 / 1002769641 by mortgage auditing and predatory servicing or lending experts. These exam and audit experts will review this mortgage account file from the date of initial contact with the mortgage provider, AEGIS LENDING CORPORATION, their applications and the origination of this account to the present date.

Again this is a **Qualified Written Request** under the Truth In Lending Act [TILA] 15 U.S.C. § 1601, et seq., the Fair Debt Collection Practices Act (FDCPA) and the Real Estate Settlement Procedures Act ("RESPA"), codified as Title 12 § 2605 (e)(1)(B) (e) and Reg. X § 3500.21(f)2 of the United States Code. TAKE NOTICE that RESPA provides substantial penalties and fines for non-compliance or failure to answer my questions & production of documents as requested in this letter within sixty [60] calendar days of its receipt.

In order to conduct the examination and audit of this loan, I need to have full and immediate disclosure including copies of all pertinent information regarding this loan. The documents requested and answers to my questions are needed for me and my audit experts to insure that this loan:

1. Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to TILA, FDCPA, RESPA, HOEPA and other laws;

2. That any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

3. That the claimed holder in due course of the monetary instrument/deed of trust/asset is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of payments;

4. That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc., were and still are properly disclosed to me;

5. That each servicer and/or sub-servicers of this mortgage have serviced this mortgage in accordance with statute, laws and the terms of mortgage, monetary instrument/deed of trust;

6. That each servicer and sub-servicers of this mortgage have serviced this mortgage in compliance with local, state and federal statutes, laws and regulations;

Page 3 of 13

7. That this mortgage account has properly been credited, debited, adjusted, amortized and charged correctly;

8. That interest and principal have been properly calculated and applied to this loan;

9. That any principal balance has been properly calculated, amortized and accounted for; that no charges, fees or expenses, not obligated to me in any agreement, have been charged, assessed or collected from this account;

9b. That a CUSIP number was assigned to my application for credit and turned into a bearer instrument and converted into a marketable security. Supply me with the CUSIP number and a copy of altered application

10. **SEC. 1088. AMENDMENTS TO THE OMNIBUS APPROPRIATIONS ACT, 2009 (AS AMENDED BY THE CREDIT CARD ACCOUNTABILITY RESPONSIBILITY AND DISCLOSURE ACT OF 2009).** (a) Section 626(a) of the Omnibus Appropriations Act, 2009 is amended—
    (1) by amending paragraph (1) to read as follows—
"(1) The Consumer Financial Protection Agency shall have authority to prescribe rules with respect to mortgage loans in accordance with section 553 of title 5, United States Code. Such rulemaking shall relate to unfair or deceptive acts or practices regarding mortgage loans, which may include unfair or deceptive acts or practices involving loan modification and foreclosure rescue services Any violation of a rule prescribed under this subsection shall be treated as a violation of a rule prohibiting unfair, deceptive, or abusive acts or practices under the Consumer Financial Protection Agency Act of 2009.";

In order to validate this debt and audit this account, I need copies of pertinent documents to be provided to me. I also need answers, certified, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on this account number or my name.

As such, please mail to me, at the address above, copies of the documents requested below as soon as possible. Please provide copies of:

11. Any certificated or uncertificated security, front and back, used for the funding of account # 4002403351.

11b. Any and all "Pool Agreement(s)" including account # 4002403351 between AEGIS LENDING CORPORATION and SPECIALIZED LOAN SERVICING, LLC account # 1002769641 and any government sponsored entity, hereinafter (GSE).

12. Any and all "Deposit Agreement(s)" regarding account # 4002403351 or the "Pool Agreement" including account # 4002403351 between AEGIS LENDING CORPORATION and SPECIALIZED LOAN SERVICING, LLC account # 1002769641 and any GSE.

13. Any and all "Servicing Agreement(s)" between AEGIS LENDING CORPORATION and SPECIALIZED LOAN SERVICING, LLC and any GSE.

14. Any and all "Custodial Agreement(s)" between AEGIS LENDING CORPORATION and SPECIALIZED LOAN SERVICING, LLC and any GSE.

15. Any and all "Master Purchasing Agreement(s)" between AEGIS LENDING CORPORATION and SPECIALIZED LOAN SERVICING, LLC and any GSE.

16. Any and all "Issuer Agreement(s)" between AEGIS LENDING CORPORATION and SPECIALIZED LOAN SERVICING, LLC and any GSE.

17. Any and all "Commitment to Guarantee" agreement(s) between AEGIS LENDING CORPORATION and SPECIALIZED LOAN SERVICING, LLC and any GSE.

18. Any and all "Release of Document agreements" between AEGIS LENDING CORPORATION and SPECIALIZED LOAN SERVICING, LLC and any GSE.

19. Any and all "Master Agreement(s) for servicer's Principle and Interest Custodial Account(s)" between AEGIS LENDING CORPORATION and any GSE.

20. Any and all "Servicers Escrow Custodial Account" between AEGIS LENDING CORPORATION and SPECIALIZED LOAN SERVICING, LLC and any GSE.

21. Any and all "Release of Interest" agreements between AEGIS LENDING CORPORATION and SPECIALIZED LOAN SERVICING, LLC and any GSE.

22. Any Trustee agreement(s) between AEGIS LENDING CORPORATION and SPECIALIZED LOAN SERVICING, LLC trustee regarding account # 4002403351 and or # 1002769641 or pool accounts with any GSE.

23. Please send to the requester a copy of any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust **and** any Note in this matter.

24. Please send to the requester a copy of any and all document(s) establishing any Trustee of record for the Mortgage/Deed of Trust **and** any Note.

25. Please send to the requester a copy of any and all document(s) establishing the date of any appointment of Trustee Mortgage/Deed of Trust **and** any Note. Please also include any and all assignments or transfers or nominees of any substitute trustee(s).

26. Please send to the requester a copy of any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust **and** any Note.

27. Please send to the requester a copy of any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust **and** any Note.

28. Please send to the requester a copy of any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust **and** any Note.

29. Please send to the requester any documentation evidencing the Mortgage or Deed of trust is **not** a constructive trust or any other form of trust.

30. Please send to the requester a certified copy of the signed promissory note showing the front and back of the document.

31. All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the date written above.

32. All descriptions and legends of all Codes used in your mortgage servicing and accounting system so that the examiners, auditors and experts retained to audit and review this mortgage account may properly conduct their work.

33. All assignments, transfers, allonges, or other document evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other document that secures payment by me to this obligation in this account from the inception of this account to the present date including any such assignments on MERS.

34. All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on MERS.

35. All deeds in lieu, modifications to this mortgage, monetary instrument or deed of trust from the inception of this account to the present date.

36. The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

37. All escrow analyses conducted on this account from the inception of this account until the date of this letter;

38. The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statement(s) including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

39. Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on this account.

40. All letters, statements and documents sent to me by your company;

41. All letters, statements and documents sent to me by agents, attorneys or representatives of your company;

42. All letters, statements and documents sent to me by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company.

43. All letters, statements and documents contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to present date.

44. All electronic transfers, assignments, sales of the note/asset, mortgage, deed of trust or other security instrument.

45. All copies of my property inspection reports, appraisals, BPOs and reports done on the property.

46. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense, which has been charged to this mortgage account from the inception of this account to the present date.

47. All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date.

48. All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date.

49. All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account until the date of this RESPA request.

50. All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the from the inception of this account until the date of this RESPA request.

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly, please provide me, in writing, the answers to the following questions listed below.

## ACCOUNT ACCOUNTING & SERVICING SYSTEMS

51. Please identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that the experts can decipher the data provided. I demand a certified Transaction Chart (T Chart) showing the GAAP journal entries made at the inception.

52. For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the name and address of the company or party that designed and sold the system.

53. For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that I, and others can adequately audit this account.

## DEBITS & CREDITS

54. Pursuant to banking law 12 USCA § 1813, please provide me the deposit slip for the alleged borrower's promissory note(s) that were issued to AEGIS LENDING CORPORATION for processing through the Federal Reserve Bank in exchange for borrower's credit on May 24, 2006 and deposited on or around 30 days after closing of the loan.

55. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on this account and the date such credit was posted to this account as well as the date any credit was received.

56. Please provide the order authorizing the withdrawal of funds from the borrower's promissory note deposit account.

57. In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on this account and the date debit was posted to this account as well as the date any debit was received.

58. For each debit or credit listed, please provide me with the definition for each corresponding transaction code you utilize?

59. For each transaction code, please provide us with the master transaction code list used by you or previous servicers.

## MORTGAGE & ASSIGNMENTS

60. Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in the parish/county property records in the parish/county and state in which my land and chattel property is located from the inception of this account to the present date? Yes or No?

61. If not, why?

62. Is your company the servicers of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?

63. Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument I executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date? Yes or No?

64. If yes, please detail for me the names of each seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed or security instrument I executed securing the obligation on this account that was not recorded in the county records where my property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

## ATTORNEY FEES

65. For purposes of my questions below dealing with attorney fees, please consider the terms attorney fees and legal fees to be one in the same.

66. Have attorney fees ever been assessed to this account from the inception of this account to the present date?

67. If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessment to this account?

68. Have attorney fees ever been charged to this account from the inception of this account to the present date?

69. If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such charge to this account?

70. Have attorney fees ever been collected from this account from the inception of this account to the present date?

71. If yes, please detail each separate collection of attorney fees from this account from the inception of this account to the present date and the date of such collection from this account?

72. Please provide for me the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date?

73. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed which authorized the assessment, charge or collection of attorney fees.

74. Please detail and list for me in writing each separate attorney fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to present date.

75. Please detail and list for me in writing each separate attorney fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to present date.

76. Please detail and list for me in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reasons for such adjustment.

77. Please detail and list for me in writing any adjustments in attorney fees collected and on what date such adjustment(s) were made and the reasons for such adjustment(s).

78. Has interest been charged on any attorney fee assessed or charged to this account? Yes or No?

79. Is interest allowed to be assessed or charged on attorney fees charged or assessed to this account? Yes or No?

80. How much in total attorney fees have been assessed to this account from the inception of this account until present date? $_____

81. How much in total attorney fees have been collected on this account from the inception of this account until present date? $_____

Page 7 of 13

82.  How much in total attorney fees have been charged to this account from the inception of this account until present date? $_____

83.  Please send to me copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from this account.

## SUSPENSE/UNAPPLIED ACCOUNTS

For purposes of this section, please treat the term suspense account and unapplied account as one and the same.

84.  Have there been any suspense or unapplied account transactions on this account from the inception of this account until present date?

85.  If yes, please explain the reason for each and every suspense transaction that occurred on this account? If no, please skip the questions in this section dealing with suspense and unapplied accounts.

86.  In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that have occurred on this account from the inception of this account until present date.

## LATE FEES

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

87.  Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

88.  Has any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

89.  Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?

90.  Are late fees considered interest? Yes or No?

91.  Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.

92.  Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

93.  If yes, please describe what expenses or charges were charged or assessed to this account.

94.  Please describe for me in writing what expenses you or others undertook due to any payment I made, which was late.

95.  Please describe for me in writing what damages you or others undertook due to any payment I made which was late.

96.  Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed which authorized the assessment or collection of late fees.

97.  Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to present date.

98.  Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to present date.

99.  Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reasons for such adjustment.

100. Has interest been charged on any late fee assessed or charged to this account? Yes or No?

101. Is interest allowed to be assessed or charged on late fees charged or assessed to this account? Yes or No?

102. Have any late charges been assessed to this account? Yes or No?

103. If yes, how much in total late charges have been assessed to this account from the inception of this account until present date? $_____

Page 8 of 13

104. Please provide me with the exact months or payment dates you or other previous servicers of this account claim I have been late with a payment from the inception of this account to the present date.

105. Have late charges been collected on this account from the inception of this account until present date? Yes or No?

106. If yes, how much in total late charges have been collected on this account from the inception of this account until present date? $_____

## LAND & CHATTEL PROPERTY INSPECTIONS

107. For purposes of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

108. Have any property inspections been conducted on my land and chattel property from the inception of this account until the present date?

109. If your answer is no, you can skip the rest of these questions in this section concerning property inspections.

110. If yes, please tell me the date of each property inspection conducted on my land & chattel property that is the secured interest for this mortgage, deed or note?

111. Please tell me the price charged for each property inspection.

112. Please tell me the date of each property inspection.

113. Please tell me the name and address of each company and person who conducted each property inspection on my land & chattel property.

114. Please tell me why property inspections were conducted on my property.

115. Please tell me how property inspections are beneficial to me.

116. Please tell me how property inspections are protective of my land & chattel property.

117. Please explain to me your policy on property inspections.

118. Do you consider the payment of inspection fees as a cost of collection? Yes or No?

119. If yes, why?

120. Do you use property inspections to collect debts? Yes or No?

121. Have you used any portion of the property inspection process on my land & chattel property to collect a debt or inform me of a debt, payment or obligation I owe?

122. If yes, please answer when and why?

123. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement I signed that authorized the assessment or collection of property inspection fees?

124. Have you labeled in any record or document sent to me a property inspection as a miscellaneous advance? Yes or No?

125. If yes, why?

126. Have you labeled in any record or document sent to me a property inspection as a legal fee or attorney fee? Yes or No?

127. If yes, why?

128. Please detail and list for me in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to present date.

129. Please detail and list for me in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to present date.

130. Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment.

Page 9 of 13

131. Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment.

132. Has interest been charged on any inspection fees assessed or charged to this account? Yes or No?

133. If yes, when and how much was charged?

134. Is interest allowed to be assessed or charged on inspection fees or assessed to this account? Yes or No?

135. How much in total inspection fees have been assessed to this account from the inception of this account until present date? $_____

136. How much in total inspection fees have been collected on this account from the inception of this account until present date? $_____

137. Please forward to me copies of all property inspections made on my property in this mortgage account file.

138. Has any fee charged or assessed for property inspections been placed into escrow account? Yes or no?


## BPO FEES

139. Have any BPOs [Broker Price Opinions] been conducted on my land & chattel property?

140. If yes, please tell me the date of each BPO conducted on my land & chattel property that is the secured interest for this mortgage, deed or note?

141. Please tell me the price of each BPO.

142. Please tell me who conducted each BPO.

143. Please tell me why BPOs were conducted on my land & chattel property.

144. Please tell me how BPOs are beneficial to me.

145. Please tell me how BPOs are protective of my land & chattel property.

146. Please explain to me your policy on BPOs.

147. Have any BPO fees been assessed to this account? Yes or No?

148. If yes, how much in total BPO fees have been assessed to this account? $_____

149. Have any BPO fees been charged to this account? Yes or No?

150. If yes, how much in total BPO fees have been charged to this account? $_____

151. Please tell me specifically what clause, paragraph and sentence in the note, mortgage or deed of trust or any agreement I have executed allows you to assess, charge or collect a BPO fee from me.

152. Please send to me copies of all BPO reports that have been done on my land & chattel property.

153. Has any fee charged or assessed for a BPO been placed into escrow? Yes or no?


## FORCED-PLACED INSURANCE

154. Have you placed or ordered any forced-placed insurance polices on my land & chattel property?

155. If yes, please tell me the date of each policy ordered or placed on my property that is the secured interest for this mortgage, deed or note.

156. Please tell me the price of each policy.

157. Please tell me the agent for each policy.

158. Please tell me why each policy was placed on my land & chattel property.

159. Please tell me how the policies are beneficial to me.

160. Please tell me how policies are protective of my land & chattel property.

161. Please explain to me your policy on forced-placed insurance.

162. Have any forced-placed insurance fees been assessed to this mortgage or escrow account? Yes or No?

163. If yes, how much in total forced-placed policy fees have been assessed to this account? $_____

164. Have any forced-placed insurance fees been charged to this mortgage or escrow account? Yes or No?

165. If yes, how much in total forced-placed insurance fees have been charged to this mortgage or escrow account? $_____

166. Please tell me specifically what clause, paragraph and sentence in the note, mortgage or deed of trust or any agreement I have executed allows you to assess, charge or collect forced-placed insurance fees from me.

167. Do you have any relationship with the agent or agency that placed any policies on my land and chattel property? If yes, please describe.

168. Do you have any relationship with the carrier that issued any policies on my land & chattel property? If yes, please describe.

169. Has the agency or carrier you used to place a forced-placed insurance policy on my land & chattel property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe.

170. Do you maintain a blanket insurance policy to protect your properties when customer policies have expired? If yes, please send me a copy of each such policy.

171. Please send to me copies of all forced-placed insurance policies that have been ordered on my land & chattel property.

### SERVICING RELATED QUESTIONS (FOR LOAN SERVICER)

For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question. In addition, I need the following answers to questions concerning the servicing of this mortgage account from its inception to the present date. Accordingly, can you please provide me, in writing, the answers to the questions listed below:

172. Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

173. Did the originator of this account or previous servicers of this account have a warehouse account agreement or contract with your company?

174. Did the originator of this account or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or any affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.

175. Please identify for me where the originals of this entire account file are currently located and how they are being stored, kept and protected?

176. Where is the original monetary instrument (*promissory note*) or mortgage I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

177. Where is the original deed of trust or mortgage and note I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

178. Since the inception of this loan, has there been any assignment of my monetary instrument/asset to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment.

179. Since the inception of this loan, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment.

180. Since the inception of this loan, has there been any sale or assignment of servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignment or sale.

181. Since the inception of this loan, have any sub-servicers serviced any portion of this mortgage loan? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that have sub-serviced this mortgage loan.

182. Has this mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, identify for me each and every account mortgage pool that this mortgage has been a part of from the inception of this account to the present date.

183. Has each and every assignment of my asset/monetary instrument been recorded in the parish/county land records where the property associated with this mortgage account is located?

184. Has there been any electronic assignment of this mortgage with MERS [Mortgage Electronic Registration System] or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or servicers that have been assigned the mortgage servicing rights to this account as well as the beneficial interest to the payments of principal and interest on this loan.

185. Have there been any investors [as defined in your industry] who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this mortgage to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust involved.

186. Please identify for me the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from its inception to the current date written above.

187. Please provide me with copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from its inception to the current date written above.

188. How much was paid for this individual mortgage account by you?

189. If part of a mortgage pool, what was the principal balance used by you to determine payment for this individual mortgage loan.

190. If part of a mortgage pool, what was the percentage paid by you of the principal balance above used to determine purchase of this individual mortgage loan.

191. Who did you issue a check or payment to for this mortgage loan?

192. Please provide me copies with the front and back of canceled check.

193. Did any investor approve the foreclosure of my property?

194. Has HUD assigned or transferred foreclosure rights to you as required by 12 USC 3754?

195. Please identify all persons who approved the foreclosure of my property!

196. Has AEGIS LENDING CORPORATION and/or **SPECIALIZED LOAN SERVICING, LLC** been paid any insurance claim based on requester's alleged default of mortgage agreement?

197. If so, provide the amount of insurance payment collect by AEGIS LENDING CORPORATION and/or **SPECIALIZED LOAN SERVICING, LLC** $_____

198. If insurance has been paid, please provide document signed under the penalty of perjury showing where there is still alleged debt owed by Jennifer Lynn Neilander and Darrell Robert Neilander.

Under the Truth In Lending Act [TILA] 15 U.S.C. § 1601, et seq., the Fair Debt Collection Practices Act (FDCPA) and the Real Estate Settlement Procedures Act ("RESPA"), codified as Title 12 § 2605 (e)(1)(B) (e) and Reg. X § 3500.21(f)2 of the United States Code it is mandatory that you provide me full disclosure of the alleged debt that is said to be owed before proceeding any further with your collection action from sixty (60) days of receipt of this CEASE & DESIST FORECLOSURE SALE NOTICE. If you do not provide all answers and production of documents requested in this Notice, you will be in fault, admitting no lawful claim and a default will be in order.

Date:  1-4-10                          BY: _____
                                       JENNIFER LYNN NEILANDER
                                       30 KING STREET
                                       WALLINGFORD, CT 06492
                                       TEL: (203) 949-1628

STATE OF CONNECTICUT
COUNTY OF NEW HAVEN } *ss.*

On the 4/7/ day of JANUARY , 2010 before me, Dorthy Constantino, personally
appeared JENNIFER LYNN NEILANDER who proved to me on the basis of satisfactory evidence to be
the person whose name is subscribed to this instrument and acknowledge to me that he is the person that
executed this instrument. I certify under PENALTY OF PERJURY under the laws of the STATE OF
CONNECTICUT that the foregoing paragraph is true and correct.

WITNESS by my hand and official seal.

Signature of Notary Public

Dorothy Ellen Constantino                  SEAL
*NOTARY PUBLIC*
My Commission Expires June 30, 2012

*Carbon Copied:*

**FEDERAL TRADE COMMISSION**
**CONSUMER RESPONSE CENTER**
600 Pennsylvania Avenue NW,
Washington, DC. 20580
Certified Mail # 7009 3410 0001 0331 6644

**OFFICE OF RESPA AND**
**INTERSTATE LAND SALES**
Office of Housing, Room # 9146
Department of Housing and Urban Development
451 Seventh Street, SW,
Washington. D.C. 20410
Certified Mail # 7009 3410 0001 0331 6620

**US DEPARTMENT OF THE TREASURY**
**OFFICE OF COMPTROLLER OF THE CURRENCY**
Customer Assistance Group,
1301 McKinney Street, Suite 3450
Houston, TX 77010
Certified Mail # 7009 3410 0001 0331 6613

**ATTORNEY GENERAL RICHARD BLUMENTHAL**
**STATE OF CONNECTICUT**
55 Elm Street
Hartford, Connecticut 06106
Certified Mail # 7008 3230 0002 3265 7417

Page 13 of 13

January 27, 2011                    Cert Mail # 7008 3330 0002 3265 72
                                                                  71

From:  Jennifer Lynn Neilander
       30 King Street
       Wallingford, CT 06492


To:    SPECIALIZED LOAN SERVICES
       8742 LUCENT STE 300
       HIGHLANDS RANCH, CO 80129-2386


Sirs:

This is a letter of dispute.

I recently pulled my credit reports and found that
SPECIALIZED LOAN SERVICES is reporting derogatory
information in my Credit Bureau accounts.

I do not recall ever having this account and dispute this.


Signed,



Jennifer Lynn Neilander


7008 3230 0002 3265 7271

## --Dispute Letter--

Jennifer Lynn Neilander
c/o 30 King Street
Wallingford, CT 06492
D.O.B: 08-19-1973

EQUIFAX                                            Jan. 31, 2010
PO Box 740241
Atlanta, GA 30374-0241

Certified Mail #  7008 3230 0002 3265 7295

To Whom it may concern:

This item on my credit report is being reported
incorrectly, and needs to be corrected. This item is having
a negative impact on my credit report. I do not recognize
this account and do not recall ever having this account. I
am asking you to investigate these items immediately and
correct the account to being paid on time. I am showing the
account number as it is in our credit bureau report.

Item #1 SPECIALIZED LOAN SERVICES    Account #: 100276XXXX
Item #2 AEGIS MORTGAGE CORP          Account #: 40025XXXX

If your investigation finds the item is incorrect, I demand
that the item be corrected immediately and my credit score
be adjusted accordingly. I appreciate your attention in
this matter.

Name: Jennifer Lynn Neilander

Social Security Number: 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

Current Address: 30 King Street
                 Wallingford, CT 06492

Sincerely,
       Signature

Copy of Driver's License enclosed.

7008 3230 0002 3265 7295

**From**:

Mail all correspondence to:

Jennifer Lynn Neilander
30 King Street
Wallingford, CT 06492

**To**:

**AEGIS LENDING CORPORATION**
PO BOX 84308
BATON ROGUE, LA 70884
CERTIFIED MAIL # 7008 3230 0002 3206 7318

*Aegis Lending corporation*
*1381 Meadow Glen Ln*
*Houston TX 77082-2647*
*Certified Mail # 7008 3230 0002 3206 7325*

SPECIALIZED LOAN SERVICING, LLC
8742 LUCENT BLVD SUITE 300
HIGHLANDS RANCH, CO 80129
CERTIFIED MAIL # 7008 3230 0002 3206 7332

"MERS"
PO BOX 2026
FLINT, MI 48501-2026
CERTIFIED MAIL # 7008 3230 0002 3206 7349

Date: 3/4/11

RE: Mortgage Record: #1255/361- Record Date June 2, 2006; APN: 1255/361; Original Loan #4002403351

## NOTICE OF DEFAULT

**To: All parties addressed above**

**MORTGAGOR(S)/GRANTOR(S):** Jennifer Lynn Neilander does hereby give Notice that the above listed parties have failed to provide Full Disclosure of the Mortgage Loan Process noted above, as required by law and as requested in the QUALIFIED WRITTEN REQUEST & DEBT VALIDATION DEMAND dated January 4th, 2011 and received by the above named parties on January 10th, 2011. MORTGAGORS/GRANTORS were provided 24 calendar days under Federal Law to respond/answer to QUALIFIED WRITTEN REQUEST which fully addressed the issue of full disclosure of the entire alleged loan mortgage/deed of trust process, yet failed to respond in the time specified. They have had since May 24, 2006 to provide full disclosure of the Mortgage Loan Process as required under Federal Law. They have failed to comply.

## LET IT BE KNOWN

All the above named "Mortgagee, Successor Mortgagee(s), Beneficiary(s)", or Assigns, Substitutes, known or unknown are hereby in DEFAULT for their failure to provide FULL DISCLOSURE to Jennifer Lynn Neilander, and this DEFAULT is cause for canceling the entire alleged loan mortgage/deed of trust process and rescinding of said signatures of Jennifer Lynn Neilander.

## ACTUAL AND CONSTRUCTIVE NOTICE

All Mortgagee(s), Successor Mortgagee(s), and Beneficiary(s) named in Mortgage as Mortgagor(s) dated May 24, 2006, and recorded June 2, 2006 under Mortgage Instrument No. 1255/361 are, hereby removed/released/dismissed of all duties, expressed or implied, effective immediately. The aforesaid Mortgagee(s), Successor Mortgagee(s), and Beneficiary(s) are expressly directed to **CEASE and DESIST** any further duties/actions of said appointment(s), or assignment(s), and a limited CEASE and DESIST on debt collections and any foreclosure actions under any number (communication shall be limited to written correspondence ONLY). Any continued actions of any nature against the property described above may result in legal actions being taken.

_____

Jennifer Lynn Neilander

Notice of Default                                                                                      Page 1 of 2

State of CONNECTICUT )

County of _New Haven_ ) ss
)

Subscribed and sworn to (or affirmed) before me on this _8_ day of _March_, 2011, by Jennifer Lynn Neilander, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _Doug Ellis Catt_ (seal)

## CERTIFICATE OF MAILING

I, Jennifer Lynn Neilander  do hereby solemnly declare, that on _March 4, ~~2010~~ 2011,~~10~~_
I did cause to be delivered by Federal Express private courier and/or first class Certified US
Mail, a true and correct copy of the foregoing instrument, including true and correct copies of
all/any documents referenced therein as "attached hereto", to the parties and locations listed
below:

Date: _3|4|11_ 　　　　　　　　 _Jennifer Lynn Neilander_

_Aegis Lending Corp_
_1381 Meadow Glen Lane_
_Houston TX 77082-2647_ 　　　_7008 3230 0002 3265 7325_
　　　　　　　　　　　　　　　　_Cert Mail_

AEGIS LENDING CORPORATION
PO BOX 84308,
 BATON ROGUE, LA 70884

CERTIFIED MAILING No. _7008 3230 0002 3265 7318_

SPECIALIZED LOAN SERVICING, LLC
8742 LUCENT BLVD SUITE 300
HIGHLANDS RANCH, CO 80129

CERTIFIED MAILING No. _7008 3230 0002 3265 7332_

"MERS"
PO BOX 2026
FLINT, MI  48501-2026

CERTIFIED MAILING No. _7008 3230 0002 3265 7349_

Asseveration of Mailing 　　　　　　　　　　　　　　　　　　　 Page 1 of 1

# BENDETT & McHUGH
## ATTORNEYS AT LAW

October 14, 2011

Jennifer Neilander
30 King Street
Wallingford, CT 06492

Re: 30 King Street, Wallingford, CT 06492

Dear Borrower(s):

Please be advised that this office has been retained by Specialized Loan Servicing, LLC, the mortgage servicer of the above referenced mortgage loan, to commence a foreclosure on the above referenced property. Federal law requires we notify you of the following:

As of the date of this letter, Specialized Loan Servicing, LLC is owed $198,900.12 on the promissory note secured by said mortgage. Because of interest, late charges and other charges that may be incurred after the date of this letter, the amount due on a later date may be greater than this amount due today. If you wish to know the amount owed at a later date, please call us at 1.800.626.5441 or write our office for this information.

**Unless, within thirty (30) days after receipt of this notice, you dispute the validity of the debt or any portion thereof, we will assume the debt to be valid. If, within thirty days after your receipt of this notice, you notify us in writing that the debt or any portion thereof is disputed, we will obtain a verification of the debt or, if the debt is founded upon a judgment, a copy of any such judgment, and we will mail to you a copy of such verification or judgment. If the original creditor is different from the creditor named above, then upon your written request, within thirty days after the receipt of this notice, we will provide you with the name and address of the original creditor. The fact that you have thirty (30) days to indicate a dispute will not prevent us from filing suit within that time.**

**However, if you dispute the debt in writing or if you request proof of the debt or the name and address of the original creditor within the thirty day time period that begins upon receipt of this letter, the law requires us to stop our collection efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you.**

If you have previously received a discharge in bankruptcy which discharged this debt, this correspondence is not and should not be construed to be an attempt to collect a debt, but only information relative to enforcement of a lien against the above referenced property.

At this time, no attorney with this firm has personally reviewed the particular circumstances of your account.

This law firm is a debt collector and is attempting to collect a debt. Any information will be used for that purpose. Please note, however, that if you have previously received a discharge in bankruptcy which discharged this debt, this law firm is not attempting to collect a debt, but is only enforcing a lien against the subject property.

Sincerely,

Bendett & McHugh, P.C.

November 7, 2011

Jennifer Neilander
30 King Street
Wallingford, CT. 06492

Bendett & McHugh
160 Farmington Ave
Farmington, CT.06032

RE: 30 King ST Wallingford CT 06492

Dear Sirs,

I'm in receipt of your unsigned letter, dated 10/14/2011 with no return address listed on your letterhead.

Please be advised that I have filed suit in the federal district court against your client October 11, 2011. Case # 3:11 cv 1551 JCH for their illegal collection and business practices. In addition, I will amend my complaint to include Fraudulent Concealment and Wrongful Foreclosure claims. In addition I will add Bendett & McHugh as an additional defendant and file a complaint with the Statewide Grievance Committee of the CT Bar if you continue your illegal collection activity without proper validation..

This notice is not a refusal to pay.   This notice constitutes my Demand to Cease and Desist Collection Activities prior to Validation under oath (verification) of alleged debt.

Furthermore, this notice confirms that your claim is disputed under 15 USC sections 1692 et seq. Please verify under oath that this claim is valid, free from any claims and defenses, including but not limited to any breach of agreement, failure of consideration, and material alteration of the original agreement.  Further, that the alleged account was transferred in good faith and by the consent of all parties involved.

> "**verification**," n. 1. A formal declaration made in the presence of an authorized officer, such as a notary public, by which one swears to the truth of the statements in the document...." Black's Law Dictionary, 7th Edition (1999).

> "It is established law that a verification is a sworn statement of the truth of the facts stated in the instrument which is verified." H.A.M.S. Company v. Electric Contractors of Alaska, Inc. (1977) 563 Pacific Reporter 258, 260.

I respectfully request that your offices provide me with competent evidence that I have any legal obligation to pay your client Specialized Loan Servicing LLC. All communications and omissions will be made part of and incorporated into any litigation arising from this matter.

I'm sure you know, under FDCPA Section 809 (b), you are not allowed to pursue collection activity until the debt is validated. You should be made aware that in **TWYLA BOATLEY, Plaintiff, vs. DIEM CORPORATION, No. CIV 03-0762 UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA, 2004,** the courts ruled that reporting a collection account indeed is considered collection activity

In addition I request that you restrict your contact with me to writing, and only when you can provide adequate validation of this alleged debt. To refresh your memory on what constitutes legal validation, I am giving a list of the required documentation:

1. Complete payment history, the requirement of which has been established via **Spears v Brennan 745 N.E.2d 862; 2001 Ind. App. LEXIS 509**
2. Agreement that bears my signature of the alleged debt and contract wherein I agreed to pay the original creditor
3. Letter of sale or assignments from the original creditor to your client. (Agreement with your client that grants Specialized Loan Servicing LLC the authority to collect on this alleged debt.) **Coppola v. Arrow Financial Services, 302CV577, 2002 WL 32173704(D.Conn., Oct. 29, 2002**) - Information relating to the purchase of a bad debt is not proprietary or burdensome. "Debtor must phrase their request clearly to obtain": The source of a debt and the amount a bad debt buyer paid for plaintiff's debt, how amount sought was calculated, where in issue a list of reports to credit bureaus, and documents conferring authority on defendant to collect debt.
4. What the money you say I owe is for
5. Documentation of how said debt was calculated. Actual debt originated the complete accounting of said debt from inception to present date. Including and not limited to, interest and any fees and payments of said debt. Pertaining to 30 King Street Wallingford, Ct 06492
6. Provide me with copies of any papers, documents, contracts or invoices of any charges  or any signed receipt or contract that I signed or agreed to pay Specialized Loan Servicing LLC
7. Intimate knowledge of the creation of the debt by you Bendett & McHugh, the "collection agency" or 3rd party debt collector.
8. Please state the following information for the present legal investor/holder of said alleged loan. Full legal name or trust #, address, telephone number and a name of an authorized contact reprentative.
9. Provide me with your Ct Bar license numbers and Registered Agent if any.
10. A copy of the contract or document, where I willingly and knowingly affixed my authorized signature, making me liable for any alleged debt to your client.

Failure to present every item 1-10 in the above documentation and <u>verification</u> in thirty-days (30) will invalidate your presentment under the laws, statutes, and subsequent commercial codes of the State of Connecticut, and Federal Law.

**You must contact me in writing and request an extension in the event that you need more than thirty-days (30) to verify and validate the debt.  Failure to do so confirms that the time limit is reasonable.**

Notice to the principal is notice to the agent, and notice to the agent is notice to the principal.

If your offices are able to provide the proper documentation as requested in the following Declaration, I will require at least 30 days to investigate this information and during such time all collection activity must cease and desist.

**NOTICE**

**THIS IS NOT A REQUEST FOR CONFIRMATION THAT YOU HAVE A COPY OF AN   AGREEMENT OR COPIES OF STATEMENTS.  THIS IS A DEMAND FOR PROOF THAT YOU HAVE THE REQUISITE KNOWLEDGE OF THE FACTS, THAT YOU PROVIDE A VERIFICATION; AND THAT THE ALLEGED CREDITOR PROVIDED ADEQUATE CONSIDERATION AND INCURRED A FINANCIAL LOSS UNDER THE FULL AND COMPLETE ORIGINAL AGREEMENT.**

I would also like to request, in writing, that you Cease and Desist your illegal collection activity and that no telephone contact be made by your offices to my home, cell phone or to my place of employment. If your offices attempt telephone communication with me, including but not limited to computer generated calls and calls or correspondence sent to or with any third parties, it will be considered harassment and I will have no choice but to file suit against your firm. All future communications with me MUST be done in writing and sent to the address noted in this letter by certified U S Mail.

Signed without prejudice

Jennifer Neilander

cc: Mitchell J Stein Esq.
    Connecticut Dept. Of Banking
    Connecticut Dept. Consumer Protection
    Connecticut Attorney General
    Federal Trade Commission
    John Wright-piggybankblog.com

Certified return receipt #        7010 2780 0001 5878 2109

# BENDETT&McHUGH

## ATTORNEYS AT LAW

December 6, 2011

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**
**AND FIRST CLASS MAIL**

Jennifer Neilander
30 King Street
Wallingford, CT 06492

**Re:    RMS Residential Properties LLC vs. Neilander, Jennifer**
**Borrower's Name: Jennifer Neilander**
**Loan Number: 1002769641**
**Property Address: 30 King Street, Wallingford, CT**

Dear Ms. Neilander:

**THE LAW FIRM OF BENDETT & McHUGH, P.C. IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. IF YOU HAVE PREVIOUSLY RECEIVED A DISCHARGE IN BANKRUPTCY WHICH DISCHARGED THIS DEBT, THIS CORRESPONDENCE IS NOT AND SHOULD NOT BE CONSTRUED TO BE AN ATTEMPT TO COLLECT A DEBT, BUT ONLY ENFORCEMENT OF A LIEN AGAINST PROPERTY.**

Please note that our office is in receipt of your letter dated November 7, 2011 disputing the validity of the above referenced debt. This letter will serve as our client's response. Please note that the original creditor was Aegis Lending Corporation with a mailing address of P.O. Box 422039, Houston, TX 77242. RMS Residential Properties LLC is the party entitled to enforce the debt evidenced by a promissory note, is the entity entitled to enforce the mortgage and has forwarded this account to our office for collection.

Enclosed please find a payoff letter good thorough December 16, 2011, which includes a breakdown of the charges owed on the account. Pursuant to the payoff letter, the total debt as of today's date is $203,206.77. Also enclosed are copies of the original note with all endorsements thereon, a copy of the subject mortgage and a payment history. Please note that your validation of debt contains requests for specific documentation. Pursuant to 15 U.S.C. 1692g we need only provide the name and address of the original creditor and validate the debt owed; it does not require us to provide any other information or documentation. These documents serve as validation of the above referenced debt. Please note that Plaintiff does not waive any or all rights or objections that it otherwise may or could assert in relation to yours requests for documentation. Please consider this letter our client's full and complete response to your request for validation of the alleged debt.

Sincerely,

Oscar L. Suarez
Bendett & McHugh, P.C.
Duly Authorized

Enclosures

December 7, 2011

Jennifer Neilander
30 King Street
Wallingford, CT. 06492

Bendett & McHugh
160 Farmington Ave
Farmington, CT.06032

RE: 30 King ST Wallingford CT 06492
    **RMS Residential Properties LLC, Loan# 1002769641**

Dear Mr. Suarez,

I'm in receipt of your letter, dated 12/06/2011.**Is it your position and claim that RMS Residential Properties LLC, Loan# 1002769641 is the holder of the note and mortgage?**

Please be advised that I have filed suit in the federal district court against your client October 11, 2011. Case # 3:11 cv 1551 JCH for their illegal collection and business practices. In addition, I will amend my complaint to include Fraudulent Concealment and Wrongful Foreclosure claims. In addition I will add Bendett & McHugh as an additional defendant and file a complaint with the Statewide Grievance Committee of the CT Bar if you personally or your firm continue your illegal collection activity without proper validation..

This notice is not a refusal to pay.  This notice constitutes my Demand to Cease and Desist Collection Activities prior to <u>Validation</u> under oath (verification) of alleged debt.

Furthermore, this notice confirms that your claim is disputed under 15 USC sections 1692 et seq. Please verify under oath that this claim is valid, free from any claims and defenses, including but not limited to any breach of agreement, failure of consideration, and material alteration of the original agreement.  Further, that the alleged account was transferred in good faith and by the consent of all parties involved.

> **"verification",** n. 1. A formal declaration made in the presence of an authorized officer, such as a notary public, by which one swears to the truth of the statements in the document...." Black's Law Dictionary, 7th Edition (1999).

> "It is established law that a verification is a sworn statement of the truth of the facts stated in the instrument which is verified." H.A.M.S. Company v. Electric Contractors of Alaska, Inc. (1977) 563 Pacific Reporter 258, 260.

I respectfully request that your offices provide me with competent evidence that I have any legal obligation to pay your client **RMS Residential Properties LLC**

communications and omissions will be made part of and incorporated into any litigation arising from this matter.

I'm sure you know, under FDCPA Section 809 (b), you are not allowed to pursue collection activity until the debt is validated. You should be made aware that in **TWYLA BOATLEY, Plaintiff, vs. DIEM CORPORATION, No. CIV 03-0762 UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA, 2004,** the courts ruled that reporting a collection account indeed is considered collection activity

In addition I request that you restrict your contact with me to writing, and only when you can provide adequate validation of this alleged debt. To refresh your memory on what constitutes legal validation, I am giving a list of the required documentation:

1. Complete payment history, the requirement of which has been established via **Spears v Brennan 745 N.E.2d 862; 2001 Ind. App. LEXIS 509**
2. Agreement that bears my signature of the alleged debt and contract wherein I agreed to pay the original creditor
3. A dated letter of sale or assignments from the original creditor AEGIS to your client **RMS Residential Properties LLC** . (Agreement with your client that grants the authority to collect on this alleged debt.) **Coppola v. Arrow Financial Services, 302CV577, 2002 WL 32173704(D.Conn., Oct. 29, 2002**) - Information relating to the purchase of a bad debt is not proprietary or burdensome. "Debtor must phrase their request clearly to obtain": The source of a debt and the amount a bad debt buyer paid for plaintiff's debt, how amount sought was calculated, where in issue a list of reports to credit bureaus, and documents conferring authority on defendant to collect debt.
4. What the money you say I owe is for
5. Documentation of how said debt was calculated. Actual debt originated the complete accounting of said debt from inception to present date. Including and not limited to, interest and any fees and payments of said debt. Pertaining to 30 King Street Wallingford, Ct 06492
6. Provide me with copies of any papers, documents, contracts or invoices of any charges  or any signed receipt or contract that I signed or agreed to pay RMS Residential Properties LLC
7. Intimate knowledge of the creation of the debt by you Bendett & McHugh, the "collection agency" or 3rd party debt collector.
8. Please state the following information for the present legal investor/holder of said alleged loan. Full legal name or trust #, address, telephone number and a name of an authorized contact reprentative.
9. Provide me with your Ct Bar license numbers and Registered Agent if any.
10. A copy of the contract or document, where I willingly and knowingly affixed my authorized signature, making me liable for any alleged debt to your client RMS Residential Properties LLC .

Failure to present every item 1-10 in the above documentation and <u>verification</u> in thirty-days (30) will invalidate your presentment under the laws, statutes, and subsequent commercial codes of the State of Connecticut, and Federal Law.

**You must contact me in writing and request an extension in the event that you need more than thirty-days (30) to verify and validate the debt. Failure to do so confirms that the time limit is reasonable.**

Notice to the principal is notice to the agent, and notice to the agent is notice to the principal.

If your offices are able to provide the proper documentation as requested in the following Declaration, I will require at least 30 days to investigate this information and during such time all collection activity must cease and desist.

**NOTICE**

**THIS IS NOT A REQUEST FOR CONFIRMATION THAT YOU HAVE A COPY OF AN   AGREEMENT OR COPIES OF STATEMENTS. THIS IS A DEMAND FOR PROOF THAT YOU HAVE THE REQUISITE KNOWLEDGE OF THE FACTS, THAT YOU PROVIDE A VERIFICATION; AND THAT THE ALLEGED CREDITOR PROVIDED ADEQUATE CONSIDERATION AND INCURRED A FINANCIAL LOSS UNDER THE FULL AND COMPLETE ORIGINAL AGREEMENT**.

I would also like to request, in writing, that you Cease and Desist your illegal collection activity and that no telephone contact be made by your offices to my home, cell phone or to my place of employment. If your offices attempt telephone communication with me, including but not limited to computer generated calls and calls or correspondence sent to or with any third parties, it will be considered harassment and I will have no choice but to file suit against your firm. All future communications with me MUST be done in writing and sent to the address noted in this letter by certified U S Mail.

Signed without prejudice

Jennifer Neilander

cc: Mitchell J Stein Esq.
    Connecticut Dept. Of Banking
    Connecticut Dept. Consumer Protection
    Connecticut Attorney General
    Federal Trade Commission
    John Wright-piggybankblog.com

Certified return receipt #

Jennifer & Darrell Neilander
30 King Street
Wallingford,CT. 06492

January 2, 20012

Bendett & McHugh
160 Farmington Ave
Farmington, CT.06032

RE: 30 King ST Wallingford CT 06492
**RMS Residential Properties LLC, Loan# 1002769641**

**Dear Attorney Suarez,**

Notwithstanding your assertions to the contrary, You're client is NOT the "holder in due course" to the subject mortgage/note transaction. You or your client have not supplied any evidence that the note is payable to RMS. If you are stating your client may have possession of our note then I'm sure you are aware that just may be a violation of the securtization agreement wherein the Depositor is the legal repository of such documentation. Your claim that your client RMS is the "holder" should be supported by proof of delivery, endorsement, and dated appropriate assignments in a proper chain of legal standing and physical custody. I don't understand your reluctance to supply us with the legal proof that your client owns this note and is the "holder in due course". Under U.C.C. and its legal definition.

As you know you are obligated to carefully check your clients records and transactions. If any party in this dispute perpetrates a fraud upon the court, we will pursue it vigorously in the proper forum. You can be assured that we are questioning virtually every aspect of the transaction because there appears to be questionable behavior on the part of multiple parties in connection with every phase of the loan transaction. Including but not limited to TILA, RESPA,HOPEA FTC Act as well has fair lending and fair housing laws and a whole variety of federal and state statues. The subsequent sale to investors of some pool of assets into which someone or some entity placed our name, identity, and reference to a private transaction between the original "lender" (who did not fund the table-funded loan) and us who unknowingly executed documents that appear to be part of a scheme to issue unregulated securities under false pretenses.

You may contact the trustee and/or search the files in Aegis Lending Corporation and its affiliated debtors in their Chapter 11 case in the U S Bankruptcy Court for the District of Delaware. I'm sure you and your firm will perform your due diligence in this matter.

Simply stated, we have every right to know the identity and contact information of the real lender or holder in due course, if there is one. We have every right to know what happened to these documents and what additional promises or conditions were placed upon the expected stream of revenue or payoff of the loan balance. In order to make an informed decision as to whether your client or any other company has the right to collect, enforce or otherwise administrate or communicate with anyone regarding the subject loan transaction.

On that account we herewith demand that you provide us with written instruments documenting your firms authority to perform any act in connection with the subject loan and the individual or individuals who authorized and funded such acts. In regards to the QWR and the questions raised in this and other correspondence. I will once again supply you with the questions your client has chosen to ignore. If additional obligors or conditions were added to the transaction after or contemporaneous with the loan transaction neither the parties nor the fees were disclosed to us. In addition, if such was the case, then the unconditional promise to pay contained in the note was modified by subsequent events raising the very "questions" you seek to avoid — specifically whether the instruments that were "negotiated" were negotiable and whether you have knowledge of whether the "actual lender" or holder in due course was paid in whole or in part.

7008 3230 0002 3265 7509

However dismissive you wish to appear of our claims, the SEC and U S Bankruptcy Court filings of the parties involved in this transaction are readily available online. We are not guessing at the facts. We are questioning your clients role in this scheme. We again demand your cooperation. Failure to do so will result in litigation as you personally have violated state and Federal laws in your threatening of foreclosure on a property your client has no legal interest in. Your firm is obligated by the laws of Connecticut to do your due diligence in investigating your clients unfounded claims. If you do not wish to be a named defendant in said litigation, then you will need to show us that your client had nothing to do with the origination of the loan and that you had nothing to do with the handling of the documents from the loan transaction, the pooling and services agreement, the assignment and assumption agreement, or any purchase of insurance products during the securitization process.

Once again we request you supply us with answers to our questions to our past QWR's. We also request the you supply us documentation we requested in previous QWR's. Your firm and client have ignored these requests for information. Why? Please supply us with the following documentation: If you refuse to supply any or all of these documents please inform us of why you are denying such documents and under what exemption you are citing. Please list in order 1-10 reasons and exemptions that you are claiming and denying us such documentation.

1) All Loan Purchase and Sales Agreements from the time of the loan was funded to and including the present regarding my note and deed of trust.
2) A true and correct certified copy of my Note, endorsements, including the allonge;
3) Any and all transferring of servicing rights and loan servicing agreements during any time since the funding of the loan to and including the present;
4) True and correct copies of any and all Asset Pooling Agreements, the Mortgage Loan Purchase Agreement, and Power of Attorney, if any; and Affidavit provided by the Custodian of Records at any time by any servicer since the origination of the loan to and including the present:;
5) Any and all MERS agreement;
6) Any and all REMIC agreements;
7) Any and all Securitization Agreements at any time concerning my Note, Deed of Trust and Loan;
8) Copies of all applications and insurance policies issued and charged against the escrow account of the subject loan at anytime whatsoever regardless of whether or not credits have been subsequently made;
9) Copies of all assignments of my note and deed of trust at any time whatsoever;
10) Copies of any and all Trust agreements, if any.

Thank You for your time. We look forward to hearing from you real soon.

Sincerely,

Jennifer

CT Attorney General

OCC

DOJ

Eric Whitenberg Co LPA