## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JENNIFER NEILANDER and
DARRELL NEILANDER,
      Plaintiffs

                                   Civil Action No. 3:11-cv-01551-(JCH)

     v.

SPECIALIZED LOAN SERVICING,
LLC, et al.,
      Defendants

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

This is an action for money damages brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA"), and also a common law claim for slander of credit. Defendants Specialized Loan Servicing, LLC ("SLS") and RMS Residential Properties, LLC ("RMS") have filed a motion to dismiss pursuant to the provisions of Fed.R.Civ.P. 12(B)(6). As shall be set forth more fully below, this Motion is not well-taken, and must be denied.

This case involves a mortgage loan that was made by Aegis Lending Corporation to Plaintiff Jennifer Neilander on May 24, 2006. At that time, Ms. Neilander executed a promissory note in the principal amount of $172,000.00 in favor of Aegis Lending Corporation (the "Note"). See Amended Complaint at Exhibit A. That Note was then pooled and securitized by Aegis Lending Corporation, which means that it was forever separated from the mortgage instrument executed by Ms. Neilander to secure that Note. Because said Note was securitized, there is no way that RMS can be the holder of the Note, as claimed by in the Affidavit of Thaddeus Larrimer, attached to the Motion to Dismiss (the "Larrimer Affidavit"). The Larrimer Affidavit also claims that RMS owns the indebtedness evidenced

by the Note. Exhibit C to the Motion to Dismiss indicates that SLS is the mortgage loan servicer for RMS.  The Larrimmer Affidavit refers to a "Servicing Agreement" Exhibit C as evidence to his truthfulness of his affidavit.

The court should take notice that Larrimer of SLS submitted a false Affidavit and document to this court. SLS supplied the court a "Servicing Agreement" Exhibit C. This document pertained to a completely different company, called **RMS Residential Mortgage Solutions, LLC**, which is <u>not</u> the same entity as Defendant RMS Residential Properties LLC. According to its web site, ~~www.residentialms.com~~, **RMS Residential Mortgage Solutions, LLC** claims to be a "Servicer Surveillance" company. The false Affidavit of Thaddeus Larrimer only brings home the point that the Third-Party Defendants have been intentionally misleading the Third-Party Plaintiffs, and they are now trying to mislead the court by submitting these false documents.

On January 11, 2011, Ms. Neilander sent a "qualified written request" to SLS demanding validation of the debt claimed to be due under the Note. See Amended Complaint at ¶ 13. Although SLS claims it provided the requested information, it never did. On January 27, 2011, Ms. Neilander sent a second letter, asking why SLS was reporting derogatory information to her credit when she never had an account with SLS. See Amended Complaint at ¶ 26. Again, and despite the claims of SLS, she never received the validation requested. See Affidavit of Jennifer Neilander, attached hereto as Exhibit A, and made a part hereof.

Indeed, and as set forth in Ms. Neilander's Affidavit, Aegis Lending Corporation, the party with whom she contracted, has provided her with correspondence that indicates that the Note was assigned to some third party. See Exhibit 3 to the Neilander Affidavit. That

correspondence plainly demonstrates that neither RMS nor SLS can provide evidence of the chain of title to the Note, which means that they are third-party collectors.

Those requests for validation and the inaccurate credit reporting are the basis of the Amended Complaint in this case. It bears noting that the Neilanders do not dispute that the obligation is enforceable, or that money is owed. The Note does not identify the proper party as the lender, and it does not describe the proper means of repayment of the Note to the parties to whom it was owed. There is no evidence of chain of title, meaning that the mortgage instrument is not related to the Note. As a result, the Plaintiffs dispute whether these particular Defendants can enforce the note, since no documents were ever executed in favor of these lenders. That makes them third-party collectors with respect to this loan.

## DISCUSSION

### A. The standard of review for this Motion.

This Court is required to provide *pro se* litigants special solicitude and is duty-bound to read the Plaintiffs' Amended Complaint broadly. See *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006); *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990). *Pro se* pleadings "must be read liberally and should be interpreted to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)); *Hemphill v. New York*, 380 F.3d 680, 687 (2d Cir. 2004) (stating that "[i]t is well-established that when a plaintiff proceeds *pro se* ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations") (citations and quotations omitted).

As *pro se* litigants, Plaintiffs' Amended Complaint is subject to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)

(quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Nevertheless, a litigant's "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Id*. (citation omitted).

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (citations omitted and second alteration in original). In *Twombly*, at 1964-69, the Supreme Court also abandoned reliance on the oft-cited line from *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." As the Court explained, a literal application of *Conley's* "no set of facts" rationale is improper because "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Twombly*, 127 S.Ct. at 1968 (alteration in original).

Instead, the Court emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level ... [,]" *id.* at 1965, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint[,]" *id.* at 1969. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. If Plaintiffs "ha[ve] not nudged their claims across the line from conceivable to plausible, [their] complaint must be dismissed." *Id.*; *see also*

*Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir. 2007) ("After careful consideration of the Court's opinion and the conflicting signals from it that we have identified, we believe the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible* ." (emphasis in original)).

A Rule 12(b)(6) motion to dismiss requires a court to "accept[ ] all factual allegations in the complaint and draw[ ] all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008); *see also Grandon v. Merrill Lynch & Co.,* 147 F.3d 183, 188 (2d Cir. 1998) (noting court must "accept as true the factual allegations made in the complaint and draw all inferences in favor of the plaintiffs"); *Blimpie Int'l, Inc. v. Blimpie of the Keys,* 371 F.Supp. 469, 470-71 (S.D.N.Y. 2005). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Glidepath Holding B.V. v. Spherion Corp.,* 590 F.Supp.2d 435, 450 (S.D.N.Y. 2007) (*quoting Leonard F. v. Israel Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir. 1999)). The Court may consider documents attached to the complaint or incorporated by reference, such as affidavits. *Rothman v. Gregor,* 220F.3d 81, 88 (2d Cir. 2000).

As shall be set forth more fully below, the Amended Complaint alleges sufficient facts to place the Defendants on notice of the nature of the claims, and those allegations states claims upon which relief may be granted. Accordingly, the Motion to Dismiss must be denied.

### B. The Amended Complaint states a claim for CSPA violations.

In analyzing claims brought pursuant to the Fair Debt Collection Practices Act, it is well-settled that this Court must employ a "least sophisticated consumer" standard. *See, e.g.,Greco v. Trauner, Cohen & Thomas, L.L.P.,* 412 F.3d 360, 363 (2d Cir. 2005) (citing *Clomon v. Jackson,* 988 F.2d 1314, 1318-19 (2d Cir. 1993) (canvassing other Circuits)). *See also Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2d Cir. 1996). The least sophisticated consumer standard was imported from Federal Trade Commission Act jurisprudence and grounded in the conclusion that the FDCPA, like other consumer-protection laws, was "not made for the protection of experts, but for the public--that vast multitude which includes the ignorant, the unthinking and the credulous." *Clomon,* 988 F.2d at 1318 (citing *Charles of the Ritz Distributors Corp. v. Federal Trade Commission,* 143 F.2d 676, 679 (2d Cir. 1944)) (quoting *Florence Manufacturing Co. v. J.C. Dowd & Co.,* 178 F. 73, 75 (2d Cir. 1910)).

Notwithstanding a certain logical incoherence to determining how the "least sophisticated consumer" would react to any conduct, the least sophisticated consumer standard is an objective standard which measures the questioned conduct "by how the 'least sophisticated consumer' would interpret [it]," *Russell,* 74 F.3d at 34, but discards "unreasonable misinterpretations." *Clomon,* 988 F.2d at 1319. The norm is crafted mindful that the statute "(1) ensures the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* at 1320.

Though it has not directly held as much, the Second Circuit has characterized the FDCPA as a "strict liability" statute because any act that violates the regulations of the FDCPA as measured by the least sophisticated consumer standard gives rise to liability,

regardless of whether the recipient of the letter suffered any actual damage as a result. *See Russell*, 74 F.3d at 33 (observing that the act "imposes strict liability."); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 63 (2d Cir. 1993) (same); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003) ("The FDCPA ... permits the recovery of statutory damages up to $1,000 in the absence of actual damages."); *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 86 (2d Cir. 1998) ("All that is required for an award of statutory damages is proof that the statute was violated, although a court must then exercise its discretion to determine how much to award, up to the $1,000.00 ceiling.").

### 1. The Defendants all meet the statutory definition of "debt collector."

In 1977, Congress enacted the Fair Debt Collection Practices Act to eliminate abusive debt collection practices by debt collectors. 15 U.S.C. § 1692(e). Among the practices forbidden by the FDCPA is the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e. Section 1692e's general prohibition is amplified by a non-exclusive list of forbidden misrepresentations.

The Act defines "debt collector" as:

> any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).

"If an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its indorsement by the holder." General Statutes § 42a-3-201(B). Absent any evidence of chain of title to the Note, there is nothing to suggest that

either SLS or RMS is anything but a third-party attempting to collect the Note that is subject to provisions of FDCPA.

Attached hereto as Exhibit B, and made a part hereof, is the Affidavit of Neil Garfield. Mr. Garfield is an expert witness who regularly consults on the questions raised in this case. Said Affidavit says clearly that the Note and the mortgage were forever separated, that the lender, Aegis Lending Corporation, was the true obligee under the Note, that the terms of repayment of the Note were not properly or fully set forth in the Note, and that the Note and mortgage were forever separated, thereby meaning that neither RMS nor SLS can enforce said Note. Consequently, this makes them third-party collectors for purposes of the FDCPA. See Garfield Affidavit.

Further, and as set forth in Jennifer Neilander's Affidavit and the letter from Aegis Lending Corporation attached thereto, neither RMS nor SLS can demonstrate the chain of title to the Note, meaning that neither has standing to try to enforce the Note. RMS cannot collect any funds allegedly owed as a consequence of the Note, because the Note was securitized and cannot be in the possession of RMS. Accordingly, RMS is, for these purposes, a "debt collector", as such term is defined in FDCPA. The same holds true for the alleged "loan servicer," SLS, which is not the party to whom the loan is allegedly owed. Both RMS and SLS are third parties attempting to collect an alleged debt. Accordingly, both of these parties clearly qualify as "debt collectors" for purposes of the Act.

**2. The collection notices sent to the Plaintiffs do not provide the name of the current owner of the alleged debt, in violation of the provisions of FDCPA.**

Section 1692e of the FDCPA provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any

debt." Here, RMS and SLS have violated the provisions of FDCPA by failing to disclose the true owner of the note. SLS has stated in their printed collection statements that SLS is the actual Creditor.

### 3. By failing to provide validation of the debt as required by the FDCPA, both SLS and RMS have violated the provisions of the FDCPA.

§ 1692g requires debt collectors to provide certain information to the debtor within five days of initial contact, including the amount of debt, the current creditor, and a statement that alerts the debtor to a presumption of validity of the debt if not challenged. 15 U.S.C. § 1692g(a)(1-3). Further, the section requires that upon request of the debtor within thirty days of initial contact, the debt collector must request a validation of the debt from the creditor and submit a copy to the debtor if the consumer disputes the debt. 15 U.S.C. § 1692g(a)(4).

Defendants make the ridiculous argument that by signing a loan modification, that somehow Mrs. Neilander is estopped from claiming that the Defendants violated the FDCPA by failing to provide proper validation of the debt. They also claim that she is estopped from denying the validity of the debt. Not surprisingly, there is not a bit of case law cited to support this contention, and for good reason: there simply is no case law to support the imposition of the doctrine of equitable estoppel where there have been multiple violations of the FDCPA, as there were here.

Further, the document sent to allegedly validate the date comes from a completely different entity, RMS Residential Mortgage Solutions LLC, which is not even the same entity as RMS defendant. See Affidavit of Jennifer Neilander, as well as Exhibit 1, attached thereto, and made a part hereof. Thus, the documents that were sent do not comply with the

requirements of the FDCPA as to what constitutes proper validation. That constitutes an actionable violation of FDCPA.

### C. Plaintiff has stated a proper claim for relief pursuant to FCRA.

Defendants incorrectly and misleading allege that there is no private right of action available to Plaintiff Jennifer Neilander pursuant to FCRA. That statement is blatantly incorrect.

Section 1681q of FCRA makes criminally liable "[a]ny person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses." 15 U.S.C. § 1681q. By virtue of 15 U.S.C. § 1681n, a consumer may also maintain a civil action against any "user of information" who "willfully" violates Section 1681q. See 15 U.S.C. § 1681(n); see also *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 47 (2d. Cir. 1997) (Section1681n incorporates Section1681q).

Section 1681q punishes a person who "obtains information . . . under false pretenses." A person cannot obtain information to which he has a right under false pretenses. *Baker v. Bronx-Westchester Investigations, Inc.*, 850 F.Supp 260, 264 (S.D.N.Y. 1994); cf. *Zamora v. Valley Federal Savings & Loan Assoc. of Grand Junction*, 811 F.2d 1368, 1370 (10th Cir. 1987) (requester violates the Act if it obtains a report for impermissible purposes while representing that the report is sought for permissible purposes); *Advanced Conservation Sys., Inc. v. Long Island Lighting Co.*, 934 F.Supp. 53, 54 (E.D.N.Y. 1996), aff'd. 113 F.3d 1229 (2d Cir. 1997)(stating "where a permissible purpose underlies the request for a consumer report, the report cannot have been obtained under false pretenses").

Here, and as set forth fully above, Defendants SLS and RMS have no right to obtain from, or to report information to, credit reporting agencies pertaining to this loan, as

neither of them can demonstrate the proper chain of title to the securitized Note, and neither have the right to enforce the Note. Hence, it is illegal for them to either obtain or report information to credit reporting agencies pertaining to the Note, and any information so obtained was obtained under false pretenses in violation of the provisions of the FCRA.

Count One and Two of the Amended Complaint state proper causes of actions pursuant to the FCRA.

### D. Plaintiffs have properly stated claims under CUTPA.

CUTPA provides in relevant part that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). Connecticut courts, when determining whether a practice violates CUTPA, will consider (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or other-wise-whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen). Thus, a violation of CUTPA may be established by showing either an actual deceptive practice or a practice amounting to a violation of public policy. *Monetary Funding Group, Inc. v. Pluchino*, 87 Conn. App. 401, 413, 867 A.2d 841 (2005).

Whether a practice is unfair and thus violates CUTPA is an issue of fact. The facts found must be viewed within the context of the totality of circumstances which are uniquely available to the trial court. Additionally, the Connecticut Supreme Court has stated that all three criteria do not need to be satisfied to support a finding of unfairness. A

practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. *Id.*

A party seeking to recover damages under CUTPA must meet two threshold requirements. First, the party must establish that the conduct at issue constitutes an unfair or deceptive trade practice. Second, the party must present evidence providing the court with a basis for a reasonable estimate of the damages suffered. *A. Secondino & Son, Inc. v. LoRicco*, 215 Conn. 336, 343, 576 A.2d 464 (1990).

The Amended Complaint alleges that because SLS and RMS do not have the proper chain of title to the Note executed by Jennifer Neilander, their actions in attempting to enforce said Note constitute actionable unfair and deceptive trade practices. This is precisely the sort of conduct that CUTPA was designed to prevent. Count Six of the Amended Complaint states a proper cause of action under CUTPA and should not be dismissed.

### E. Plaintiffs have properly stated a claim for slander under Connecticut law.

The Connecticut Supreme Court set forth the basic requirements of defamation. "To establish a prima facie case of defamation, the plaintiff must demonstrate that: (l) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiffs reputation suffered injury as a result of the statement." *Cweklinski v. Mobil Chemical Co.,* 267 Conn. 210, 217, 837 A.2d 759 (2004). "A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Id.

Here, the Amended Complaint alleges that neither SLS nor RMS has standing to enforce the Note. Consequently, any adverse credit reporting by either of them with respect to Jennifer Neilander is slanderous, as neither has privilege to make those defamatory remarks, and they are intended to harm her credit rating. Accordingly, the Amended Complaint properly states a claim for slander pursuant to Connecticut law.

## CONCLUSION

For the reasons stated above, in addition to the Defendants submitting a false affidavit to the court, the Motion to Dismiss filed by Defendants SLS and RMS must be denied.

Respectfully submitted,

DARRELL NEILANDER
Plaintiff pro se
30 KING STREET
WALLINGFORD, CT 06492
dneilander@sbcglobal.net

JENNIFER NEILANDER
Plaintiff pro se
30 KING STREET
WALLINGFORD, CT 06492
dneilander@sbcglobal.net

## CERTIFICATE OF SERVICE

I hereby certify and swear that a copy of the foregoing response has been sent via U.S. Mail and served upon all persons registered to receive such service via ECF on May 5, 2012

Martha Croog
The Brownstone
190 Trumball Street, Second Floor
Hartford, CT 06103

Bendett & McHugh
160 Famington Ave
Farmington, CT 06032

Darrell  Neilander